## THE STAINCLIFFE, etc.

*(Circuit Court, S. D. New York.  February 27, 1883.)*

NEGLIGENT DELIVERY OF CARGO—DELIVERY BY SPECIAL REQUEST—BURDEN OF PROOF OF REQUEST.

> The libelant filed a libel against the defendant to recover damages for the non-performance of a contract for the delivery of merchandise in good order. The defense admits the improper delivery, but seeks to justify on the ground that the delivery was made at the request of the libelant, who was anxious for an immediate delivery, and assented to assume the risk. *Held*, that the burden of proof is with the defendants to establish satisfactorily such exculpatory theory.

*Benedict, Taft & Benedict,* for appellants.

*Butler, Stillman & Hubbard,* for appellees.

WALLACE, J.  The libel in this cause was filed to recover damages for the non-performance of a contract for the delivery, in good order, of 1,000 barrels of Portland cement, shipped on the steam-ship Staincliffe, for New York.

The district court dismissed the libel.  The following facts are found:

On or about September 10, 1877, J. B. White & Bros. shipped in good order and condition, on board the steamer Staincliffe, then lying at London and bound for New York, 1,000 barrels of cement, to be carried to New York and there delivered to the libelant, in like good order, for certain freight to be paid. The steam-ship arrived in New York October 2d, and October 3d the libelant paid the freight. October 3d the steam-ship commenced discharging her cargo, and put off 52 barrels of the cement, which was accepted by the libelant. On the fourth day of October slight showers fell in the forenoon, and the indications for more rain were threatening. On that day the steam-ship discharged upon the dock 621 barrels, and delivered to the lighter Comet 327 barrels, making her entire cargo of cement. The libelant, on the third and fourth days of October, had given orders to lightermen, including the Comet and others, for 933 barrels. October 4th the steam-ship was taking in outward-bound cargo, as well as discharging cargo, and the dock was so crowded that access to the cement was not practicable. Late in the afternoon it rained hard, and the cement, though requiring protection from the rain, was not protected; 16 barrels, however, of that discharged upon the dock was taken away by a truckman, to whom the libelant had given an order. The remaining 605 barrels of that put off upon the dock remained unprotected during the night of the fourth, and was taken away in a more or less wet and damaged condition, by the libelant's directions, on the fifth and sixth of October. The fourth day of October was an unsuitable day to put off the cement, owing to the state of the weather, unless it was protected from danger. The injury to the cement was caused by its being wet on the afternoon and evening of October 4th. The libelant did not consent to accept the delivery of the cement put off upon the dock on the fourth day of October.

The conclusion is reached that the libelant should recover, for the following reasons: It is not disputed that a considerable part of the cement which the steam-ship was bound to deliver in good order was injured in consequence of being discharged in unsuitable weather without any protection from the elements; nor is it disputed that such a discharge is not a good delivery of the merchandise. The claimants, however, seek to justify upon the theory that, although the cement was put off in unsuitable weather, this was done at the request of the libelant, who was anxious for an immediate delivery and assented to assume the risk. The burden of proof is with the claimants to establish satisfactorily this exculpatory theory. They have produced two witnesses to sustain it,—Nunns, the steamer's discharging clerk, and Johnson, her cooper,—who testified, in substance, that early in the afternoon of October 4th the libelant requested that all the cement then on board the steamer should be put off, as he expected a lighter there that afternoon to take it away. Nunns further testifies that he objected to discharging the cement on account of the weather, and told the libelant he would not do it unless the latter would take the responsibility of watching and protecting it; that the libelant assented to this, and thereupon he directed the foreman of the stevedores to go on and discharge the cement. The libelant denies that any such conversation took place. If it should be conceded that libelant expected all the cement to be taken away for which he had given delivery orders, there would still have remained 67 barrels for which he had made no provision, and which he would have been obliged to truck away and store. But it does not appear that he had any reason to expect that 106 more barrels, for which he had only that day given delivery orders, would be wanted that day; and, indeed, it is doubtful whether he expected any to be taken away that day other than 500 barrels which the lighter Comet was to take. It is, therefore, improbable that he should have made such a statement as is imputed to him by Nunns and Johnson. It is also improbable that he should have gone away and remained away the rest of the day, and taken no interest in protecting his merchandise, if he expected it to be put off.

The proofs also indicate quite cogently that at the time when this alleged interview must have taken place, there had already been put off upon the dock the greater part of the 605 barrels that were injured. The lighter Comet was expected to take away 500 barrels. Some time after the libelant left the dock, the slip was cleared, and the Comet drew along-side the steamer, and for the convenience of

both vessels the latter discharged the cement directly from her hold to the lighter. When 327 barrels were thus discharged, the captain of the lighter refused to receive any more, because the rain was so heavy as to endanger the cement. The foreman of the stevedores tried to induce the lighter to take her full cargo; and when the latter refused, discharged some 50 barrels, all that then remained in the hold, upon the dock. During all this time the steamer was taking in cargo, the dock was crowded with discharged cargo, and access to it was difficult if not impracticable. The conclusion cannot be resisted that those in charge of the steamer were so solicitous to discharge her cargo that they neglected to protect the libelant's cement. The libelant was justified in assuming that the Comet would be afforded facilities for taking away the cement already upon the dock when he was there, and that the steamer would do her duty and protect it if the weather should require that to be done.

In view of the circumstances, the probabilities, and the testimony of the libelant, the claimants have not satisfactorily maintained the issue of which they have the affirmative.

A decree is ordered for the libelant, with costs of this appeal and in the court below. There will be a reference to a master to ascertain the damages.